**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LARISSA L. REYNOLDS,<br><br>                    Plaintiff,<br>          v.<br><br>NANCY A. BERRYHILL,[1]<br>Acting Commissioner of Social<br>Security,<br><br>                    Defendant. | ) No. EDCV 16-01876-AS<br>)<br>) **MEMORANDUM OPINION AND ORDER**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PROCEEDINGS**

On September 1, 2016, Plaintiff Larissa L. Reynolds ("Plaintiff") filed a Complaint, seeking review of the Commissioner's denial of Plaintiff's application for a period of disability and supplemental security income (SSI). (Docket Entry No 1). On January 23, 2017, Defendant filed an Answer to the Complaint, (Docket Entry No. 17), and the Certified Administrative

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and is substituted for Acting Commissioner Carolyn W. Colvin in this case. See 42 U.S.C. § 205(g).

1

Record ("AR"). (Docket Entry No. 18). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 10, 14). On April 18, 2017, the parties filed a Joint Stipulation ("Joint Stip."), setting forth their respective positions on Plaintiff's claims. (Docket Entry No. 19).

For the reasons discussed below, the decision of the Administrative Law Judge is REVERSED and REMANDED for further proceedings.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff asserts disability beginning October 12, 2008, based on alleged physical and mental health impairments related to anxiety and back and wrist pain. (AR 165). On December 2, 2011, Administrative Law Judge ("ALJ"), Tamara Turner-Jones, examined the record and heard testimony from Plaintiff and a vocational expert ("VE"). (AR 427-65). On January 27, 2012, ALJ Turner-Jones denied Plaintiff benefits in a written decision ("Prior Decision"). (AR 511-28). On May 13, 2013, Plaintiff filed a complaint in United States District Court to appeal her denial of disability. (Reynolds v. Colvin, 5:13-cv-00894-SH, Docket Entry No. 1). On February 19, 2014, United States Magistrate Judge Stephen Hillman reversed and remanded the Prior Decision with instructions to give specific and legitimate reasons to reject the opinion of consultative examiner, Ezzat Abdelmalek, M.D. (See AR 548-52). On July 29, 2015, ALJ Andrew Verne ("the ALJ") held a hearing, which was continued so that

Plaintiff could obtain counsel. (AR 466-74). On January 27, 2016, the ALJ examined the record and heard testimony from Plaintiff and vocational expert, Victoria Rei ("VE"). (AR 475-510). On May 18, 2016, the ALJ denied Plaintiff benefits in a written decision. (AR 405-19).

The ALJ applied the five-step sequential process in evaluating Plaintiff's case. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after the alleged onset date. (AR 407). At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative joint disease of the lumbar spine, lumbar myofascial strain, cervical myofascial strain, anxiety disorder, "rule out bipolar disorder," panic disorder, major depressive disorder, and social phobia. (AR 407). At step three, the ALJ found that Plaintiff's impairments did not meet or equal a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 408).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform medium work, but can lift 50 pounds occasionally and 25 pounds frequently; stand, walk, and/or sit for six hours in an eight-hour workday with regular breaks; climb, balance, stoop, kneel, crouch, and crawl frequently; use her right hand for fine and gross manipulation frequently; avoid

---

[2] A Residual Functional Capacity is what a claimant can still do despite existing exertional and non-exertional limitations. <u>See</u> 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

concentrated exposure to pulmonary irritants, such as dust, fumes, gases, and odors; sustain attention and concentration, persistence, and pace in at least two-hour blocks of time; is limited to simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work-related decisions with few, if any, workplace changes; is limited to occasional interaction with the public and coworkers; and is limited to work that is isolated with only occasional supervision. (AR 409).

In making this finding, the ALJ determined that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms were less than fully credible. (See AR 411). The ALJ gave "some weight" to the lay witness opinions of Timothy Lampie, Plaintiff's husband, and Susan Reynolds, Plaintiff's mother. (AR 412).

The ALJ then considered the opinions of Plaintiff's treating and nontreating physicians. In considering Plaintiff's physical limitations, the ALJ gave "great weight" to the opinion of orthopedic consultative examiner, Payam Moazzaz, M.D., who opined that Plaintiff could perform a range of medium work, (AR 318-23), and the ALJ gave "little weight" to the opinions of consultative examiner, Terrance P. Flanagan, M.D., and State agency physicians, Susan Lee, M.D., R. Paxton, M.D., and K. Loomis, M.D., who all opined that Plaintiff had nonsevere limitations, (AR 296-305, 338-40, 415).

In considering Plaintiff's mental limitations, the ALJ gave "little weight" to psychiatric consultative examiner, Sohini P. Parikh, M.D., and State agency psychologist, R. Paxton, M.D., who opined that Plaintiff had nonsevere mental limitations. (AR 278-85, 415). The ALJ gave "some weight" to the opinion of State agency psychologist, K. Loomis, M.D., adopting Dr. Loomis's opinion that Plaintiff could perform simple tasks with limited public contact. (AR 324-37, 415).

The ALJ also gave "some weight" to the opinion of psychiatric consultative examiner, Ezzat Abdelmalek, M.D. (AR 416). In a July 20, 2010, psychiatric evaluation, Dr. Abdelmalek opined that Plaintiff's ability to understand, remember, and perform instructions was fair for simple tasks and poor for complex tasks; maintain focus and concentration was poor; interact with the public, co-workers, and supervisors was poor; comply with job rules, such as safety and attendance, was poor; respond to changes in a routine work setting was severely impaired; respond to work pressure in a usual work setting was poor; and her daily activities were fair. (AR 313-17). The ALJ rejected Dr. Abdelmalek's opinion that Plaintiff was severely impaired in her ability to respond to changes in a routine work setting because "subsequent medical records show that [Plaintiff] had some improvement of her symptomology with medication and Plaintiff's "activities of daily living, such as her ability to care for her children despite her conditions, suggests that her ability to respond to change is not as limited as indicated by Dr. Abdelmalek." (AR 416).

The ALJ gave "some weight" to the opinion of psychological consultative examiner, Clifford Taylor, M.D. (AR 416, 713-720). The ALJ rejected Dr. Taylor's opinion that Plaintiff is only mildly limited in her interaction with the public because the ALJ gave Plaintiff "the benefit of the doubt" in limiting Plaintiff's contact with co-workers, supervisors, and the public considering Plaintiff's high anxiety during Dr. Abdelmalek's examination and Plaintiff's subjective complaints of social phobia. (AR 416).

The ALJ gave "little weight" to the opinion of Plaintiff's treating physician, Monica Gordon, M.D. (AR 416). In a January 27, 2011, medical opinion form, Dr. Gordon opined that Plaintiff was "limited but satisfactory" in her ability to adhere to basic standards of neatness and cleanliness; "seriously limited but not precluded" in her ability to carry out very short and simple instructions, ask simple questions or request assistance, be aware of normal hazards and take appropriate precautions, set realistic goals or make plans independently of others, maintain socially appropriate behavior, and use public transportation; "unable to meet competitive standards" in her ability to remember work-like procedures, understand and remember very short and simple instructions, maintain attention for 2-hour segments, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from psychological symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond

appropriately to criticism from supervisors, get along with co-workers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, understand and remember detailed instructions, deal with stress of semiskilled and skilled work, interact appropriately with the general public, and travel in unfamiliar places; and had "no useful ability to function" in working in coordination with others without being unduly distracted and dealing with normal work stress. (AR 399-400). Dr. Gordon explained her reasoning for the above assigned limitations in stating, "[t]he patient has severe anxiety that is worse around people. Recently she is experiencing odd head sensations while in public. She has thoughts and images of bad things happening to her family. Due to her symptoms has difficulty concentrating and remembering things. She even has difficulty remembering her app[ointmen]ts despite reminders." (AR 400). Dr. Gordon concluded that Plaintiff would miss more than four days of work per month. (AR 400).

In a February 4, 2016, medical opinion form, Dr. Gordon opined the following somewhat less restrictive limitations: Plaintiff was "unlimited or very good" in her ability to be aware of normal hazards and take appropriate precautions; "limited but satisfactory" in her ability to understand, remember, and carry out very short and simple instructions, ask simple questions or request assistance, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness; "seriously limited but not precluded" in her ability to remember work-like procedures, maintain

attention for 2-hour segments, make simple work-related decisions, accept instructions and respond appropriately to criticism from supervisors, understand and remember detailed instructions, set realistic goals or make plans independently of others, interact appropriately with the general public, and travel in unfamiliar places; "unable to meet competitive standards" in her ability to maintain regular attendance and be punctual within customary, usually strict tolerances, work in coordination with or proximity to others without being unduly distracted, perform at a consistent pace without an unreasonable number and length of rest periods, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, carry out detailed instructions, and use public transportation; and had "no useful ability to function" in completing a normal workday and workweek without interruptions from psychologically based symptoms, responding appropriately to changes in a routine work setting, dealing with normal work stress, and dealing with the stress of semiskilled and skilled work. (AR 772-73).

The ALJ found that Dr. Gordon "assessed limitations that would essentially preclude [Plaintiff from] all work." (AR 416). The ALJ rejected Dr. Gordon's opinion because she "merely checked a box on a form in reaching this conclusion"; Dr. Gordon's statements were vague because she did not provide objective clinical findings to support her opinions; and the record did not support such restrictive limitations because "it would be reasonable to assume that an individual with such severe limitations would require

hospitalization . . . "; and Plaintiff engaged in normal activities of daily living, such as caring for her three children, which the ALJ considered as evidence of emotional stability. (AR 416).

The ALJ also gave "some weight" to the opinion of medical expert, Marcus Anderson, M.D. (AR 417). Dr. Anderson opined that Plaintiff was mildly impaired in her ability to understand and perform simple instructions; moderately impaired in her ability to perform complex instructions; mildly impaired in her ability to interact appropriately with co-workers, supervisors, and the public; and moderately impaired in her ability to tolerate basic work-related stressors. (AR 820). The ALJ found that Dr. Anderson's opinion was generally consistent with "objective medical findings showing evidence of psychomotor slowing and impaired ability to focus." (AR 417). The ALJ rejected Dr. Anderson's opinion that Plaintiff is only mildly impaired in her ability to appropriately interact with co-workers, supervisors, and the public, instead finding that Plaintiff is moderately impaired in this area because of her irregular behavior during a consultative examination with Dr. Abdelmalek and Plaintiff's subjective complaints of anxiety and social phobia. (AR 417).

At step four, the ALJ found that Plaintiff is unable to perform her past relevant work. (AR 417). At step five, the ALJ found Plaintiff was able to perform jobs consistent with her age, education, and medical limitations existing in significant numbers in the national economy. In particular, the ALJ found that

Plaintiff could perform the requirements of machine feeder (DOT 699.686-010), machine packager (DOT 920.685-078), and industrial cleaner (DOT 381.687-018). (AR 418). Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 418).

## STANDARD OF REVIEW

This Court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Commissioner of Social Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To assess whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001). As a result, "[i]f the evidence can reasonably support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

## PLAINTIFF'S CONTENTIONS

Plaintiff contends that (1) the ALJ failed to follow instructions on remand to provide specific reasons to reject the

opinion of psychiatric consultative examiner, Dr. Abdelmalek; and (2) did not provide specific and legitimate reasons to reject the opinion of Plaintiff's treating physician, Dr. Gordon. (Joint Stip. at 3-6, 10-14).

**DISCUSSION**

## A. The ALJ Did Not Comply With Instructions On Remand

Plaintiff asserts that the ALJ failed to follow instructions on remand by not providing reasons to reject portions of Dr. Abdelmalek's opinion. (Joint Stip. at 4-5). Specifically, Plaintiff contends that "the ALJ only addressed Dr. Abdelmalek's opinion regarding Plaintiff's severe limitation in responding to routine changes in a workplace setting; the ALJ did not provide any reasons whatsoever for disregarding any of the 'poor' abilities identified by [Dr. Abdelmalek]." (Joint. Stip. at 4).

Defendant contends that the ALJ based the RFC finding on an analysis of the record a whole, and "[w]hile Plaintiff may disagree with the ALJ," the ultimate decision of disability is left up to the Commissioner. (Joint Stip. at 4-9).

"As a general principle, the United States Supreme Court has recognized that an administrative agency is bound on remand to apply the legal principles laid down by the reviewing court." Ischay v. Barnhart, 383 F. Supp. 2d 1199, 1213 (C.D. Cal. 2005) (citing F.C.C.

v. Pottsville Broadcasting Co., 309 U.S. 134, 145 (1940); United Gas Improvement Co. v. Continental Oil Co., 381 U.S. 392, 406 (1965). The Supreme Court has also recognized that an agency may not disregard instructions on remand:

> Where a court finds that the [Commissioner] has committed a legal or factual error in evaluating a particular claim, the district court's remand order will often include detailed instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed . . . . Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review.

Sullivan v. Hudson, 490 U.S. 877, 885-86 (1989). "The rule of mandate requires that, on remand, the lower court's actions must be consistent with both the letter and the spirit of the higher court's decision." Ischay, 383 F.Supp.2d at 1199 (citing United States v. Cote, 51 F.3d 178, 181 (9th Cir. 1996) (emphasis in original). The law of the case doctrine compels "an inferior court" to follow "'the [appellate court's] decree as the law of the case; and must carry it into execution, according to the mandate.'" Sanchez v. Astrue, No. 1:11-CV-00254-SKO, 2012 WL 3704756, at *10 (E.D. Cal. Aug. 27, 2012) (quoting Vizcaino v. U.S. District Court, 173 F.3d 713, 719 (9th Cir. 1999). Citing Supreme Court precedent, district courts in the Ninth Circuit have applied the law of the case doctrine and rule of

mandate doctrine in the social security context. See Ischay, 383
F.Supp.2d at 1199 (ALJ exceeded scope of remand instructions by re-
determining a plaintiff's RFC); Folsom v. Colvin, No. ED CV 16-291-
PLA, 2016 WL 6991194, at *7 (C.D. Cal. Nov. 29, 2016) (ALJ violated
the rule of mandate doctrine by rejecting physician's findings when
district court remand order directed ALJ to credit physician's
opinion). Reversal is warranted under these doctrines when an ALJ's
decision "exceed[s] the scope of and/or contravene[s] district court
remand orders." Almarez v. Astrue, No. EDCV 09-00140-MAN, 2010 WL
3894646, at *3 (C.D. Cal. Sept. 30, 2010).

Here, the district court, in its memorandum decision, ruled as
follows:

Despite the ALJ's characterization of the "great weight"
given to Dr. Abdelmalek's opinion, the ALJ has essentially
rejected the vast majority of Dr. Abdelmalek's psychiatric
assessments. If the ALJ has rejected Dr. Abdelmalek's
consultative opinion, as she has here, [t]hen Camickle[ v.
Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir.
2008)] requires that there must be specific reasons why it
was rejected. . . . The Court, therefore, reverses the
ALJ's decision and remands with direction to the ALJ to
make the proper findings regarding Dr. Abdelmalek's
opinion consistent with this decision.

(AR 551).   In sum, the district court found that the ALJ erred in
rejecting certain portions of Dr. Abdelmalek's opinion without
providing specific and legitimate reasons for doing so.   The
district court's remand order therefore required the ALJ to provide
specific reasons to reject Dr. Abdelmalek's <u>entire</u> opinion.

On remand, the ALJ gave "some weight" to Dr. Abdelmalek's
opinion and provided reasons for rejecting Dr. Abdelmalek's finding
that Plaintiff is severely limited in her ability to respond to
workplace changes.[3]   (AR 416).   The RFC otherwise accounts for most
of the opined limitations in Dr. Abdelmalek's assessment.   The RFC
limits Plaintiff "to simple, routine, and repetitive tasks," and Dr.
Abdelmalek opined Plaintiff has a poor ability to understand,
remember, and perform complex tasks.   The RFC states that Plaintiff
can maintain focus and concentration in "at least 2-hour blocs," and
Dr. Abdelmalek opined that Plaintiff has a poor ability to maintain
focus and concentration.   The RFC limits Plaintiff to "occasional
interaction with the public and co-workers," and Dr. Abdelmalek
opined that Plaintiff has a poor ability to interact with the
public, co-workers, and supervisors.   (<u>Compare</u> 316-17 <u>with</u> 409).

However, the RFC fails to account for Dr. Abdelmalek's opinion
that Plaintiff has a poor ability to comply with job rules, such as

_____

[3]   Plaintiff alternatively asserts that the ALJ did not give
specific and legitimate reasons for rejecting Dr. Abdelmalek's
opinion that Plaintiff is severely limited in responding to
workplace changes.   (<u>See</u> Joint Stip. at 5-6).   Because this matter
is being remanded, the Court does not address Plaintiff's
contention.

14

safety and attendance. The RFC limits Plaintiff to "a work environment free of fast-paced production requirements, involving only simple work related decision[s]," which reasonably accounts for safety limitations, but the RFC does not address poor attendance. (AR 409). See Dennis v. Colvin, No. 06:14-CV-00822-HZ, 2015 WL 3867506, at *7 (D. Or. June 20, 2015) ("RFC's limitations in noise levels, instruction complexity, and decision making [do not] account for the limitations in attendance" when ALJ implicitly accepted doctor's opinion that plaintiff had moderate attendance limitations.).

The ALJ implicitly rejected Dr. Abdelmalek's opinion that Plaintiff has a poor ability to comply with job rules, such as attendance, by failing to account for this limitation in the RFC or providing specific reasons to reject this portion of Dr. Abdelmalek's opinion. The district court's instructions directed the ALJ to give "specific reasons" for rejecting Dr. Abdelmalek's psychiatric assessments because ALJ Turner-Jones, in the Prior Decision, implicitly rejected portions of Dr. Abdelmalek's opinion without explanation. (AR 551). Accordingly, by failing to provide an explanation to reject a portion of Dr. Abdelmalek's opinion, the ALJ did not follow remand instructions.

//
//
//

**B.** **The ALJ Did Not Provide Specific And Legitimate Reasons To Reject The Opinion Of Treating Physician, Dr. Gordon**

Plaintiff asserts that the ALJ did not provide specific and legitimate reasons to reject the opinion of treating physician, Dr. Gordon, for the following reasons: (1) contrary to the ALJ's assertion that Dr. Gordon only checked a box in making her opinion, Dr. Gordon provided "a thorough handwritten explanation of the basis for her medical opinion" in her January 2011 assessment; (2) Dr. Gordon's treatment notes from January 27, 2011, demonstrate that Dr. Gordon reviewed her treatment notes in making her opinion; (3) the ALJ did not develop the record by failing to contact Dr. Gordon in order to clarify the basis for her opinion, in contradiction with Social Security Ruling ("SSR") 96-5; (4) the record supports Dr. Gordon's findings regarding severe anxiety and a diagnosis of major depressive disorder; (5) the ALJ improperly supplemented his opinion for that of a medical professional in determining that Plaintiff would have been hospitalized at some point if Dr. Gordon's opinion were accurate; and (6) although Plaintiff cared for her children, she did so with great difficulty and with help from family members. (Joint Stip. at 12-14).

Defendant contends that the ALJ provided sufficiently specific and legitimate reasons to reject Dr. Gordon's opinion because (1) Dr. Gordon used a check-the-box form to give her opinion; (2) the ALJ did not have a duty to contact Dr. Gordon to clarify her opinion solely because the ALJ rejected her opinion; (3) the record

demonstrates that Plaintiff's ability to take care of her children supports less restrictive mental health limitations; and (4) throughout the record, there was evidence that Plaintiff's symptoms improved with treatment. (Joint Stip. at 14-17).

Social Security regulations require the Agency to "evaluate every medical opinion we receive," giving more weight to evidence from a claimant's treating physician. 20 C.F.R. § 404.1527(c). If the treating or examining physician's opinions are not contradicted, they can only be rejected with clear and convincing reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Where a treating or examining physician's opinion is contradicted by another doctor, the "[Commissioner] must determine credibility and resolve the conflict." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (quoting Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002). "An ALJ may reject the testimony of an examining, but non-treating physician, in favor of a non-examining, non-treating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." Lester, 81 F.3d at 831, (as amended) (Apr. 9, 1996) (quoting Roberts v. Shalala, 66 F.3d at 179, 184 (9th Cir. 1995)). While the opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies rejecting the opinion of a treating physician, Lester, 81 F.3d at 831, it may serve as substantial evidence when the opinion is consistent with "independent clinical findings or other evidence in the record." Thomas, 278 F.3d 947 at 957. An ALJ satisfies the "substantial

evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof and making findings." Garrison, 759 F.3d at 1012 (citations omitted).

Dr. Gordon's opinions were contradicted by the opinions of Dr. Taylor, Dr. Abdelmalek, and Dr. Anderson. Accordingly, the ALJ was required to provide specific and legitimate reasons to reject Dr. Gordon's opinion. See Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014).

As set forth below, the ALJ's reasons for rejecting Dr. Gordon's opinion do not constitute specific and legitimate reasons.

Although Dr. Gordon's assessments were in the form of check-box questionnaires, that is not a proper basis for rejecting an opinion that is supported by treatment notes. Garrison, 759 F.3d at 1013 ("[ALJ] failed to recognize that the opinions expressed in check-box form . . . were based on significant experience with [claimant] and supported by numerous records, and were therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit."); see also Esparza v. Colvin, 631 F. App'x 460, 462 (9th Cir. 2015). Dr. Gordon regularly saw Plaintiff from April 2010 to February 2016 for severe anxiety, social phobia, and major depressive disorder. (AR 350-401, 723-803). During appointments, Plaintiff's affect was congruent, anxious, and blunted; mood was depressed and irritable; thought content was worried; and she had

difficulty remembering information and falling asleep. (AR 353, 358, 366, 369, 373, 376-77, 380, 723-24, 731, 734, 742, 752-55). Plaintiff reported feeling "odd in the head when she is in public"; seeing images, such as her "son being ran over"; having panic attacks, although "not often"; and "hearing her name being called occasionally." (AR 361, 373, 380). In 2013, Plaintiff reported anxiety 5-7 days per week and depression 3 to 5 days per week, and in 2014 through 2015, she reported anxiety 3-5 days per week and depression 1 to 2 days per week (AR 738-40, 751). Plaintiff was frequently a "no show" at appointments, which Dr. Gordon attributed to Plaintiff's difficulty concentrating and remembering things like appointments "despite reminders." (AR 353-54, 359, 362, 400, 725 400). Dr. Gordon's extensive notes are consistent with the checked-box forms and provide the basis for her opinion.

The ALJ's general assertion that Dr. Gordon did not provide objective clinical findings to support her assessments is an insufficient reason for rejecting her opinion. While an ALJ may reject a treating physician's opinion that is brief, conclusory and inadequately supported by clinical findings, see Batson v. Comm'r, 359 F.3d 1190, 1195 n. 3 (9th Cir. 2003), an ALJ "must do more than state conclusions." Esparza, 631 F. App'x at 462; Garrison, 759 F.3d ay 1012-13 (ALJ erred in rejecting medical source's opinion by "asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for" that rejection). Here, the ALJ generally asserted that Dr. Gordon did not provide clinical findings

to support her opinion, without further explanation. Such a general assertion is not sufficient to reject a treating doctor's opinion.

Moreover, contrary to the ALJ's assertion, Dr. Gordon did provide explanations for the limitations that she assessed. Even if the ALJ had provided a legally sufficient reason to reject Dr. Gordon's opinion, the reason must still be supported by substantial evidence. Batson v. Commiss'r of Soc. Sec, Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). In her January 2011 opinion, Dr. Gordon provided a brief explanation for her assessment, stating Plaintiff "has severe anxiety that is worse around people," and experiences head sensations in public, has thoughts and images of bad things happening to her family, which causes her to have difficulty concentrating and remembering things like appointments. (AR 400). In her February 2016 assessment Dr. Gordon included a contemporaneous treatment note, giving Plaintiff a guarded prognosis because of anxiety "when she is under stressful or social situations." (AR 774). The record also contains extensive treatment notes from Dr. Gordon. Thus, the ALJ's general assertion that Dr. Gordon did not provide clinical findings to support her opinion is not supported by substantial evidence.

The ALJ's broad assertion that "treatment records do not support such restrictive limitations" because "an individual with such severe limitations would require hospitalization" is not a specific and legitimate reason to reject Dr. Gordon's opinion. An ALJ may not provide such a "conclusory assertion" to reject a

physician's assessment of a plaintiff's mental health conditions. Toland v. Astrue, No. ED CV 10-635-PLA, 2011 WL 662336, at *5 (C.D. Cal. Feb. 14, 2011) ("ALJ provided no support for his conclusory assertion that Dr. Alfonso should have had plaintiff hospitalized, confined, or committed to guardianship if she truly believed that plaintiff has the limitations represented in the . . . [e]valuation, and such a conclusory assertion, by itself, is insufficient to reject a treating physician's finding."); Mashburn v. Astrue, 2010 WL 891632, at *5-6 (W.D.Mo. March 8, 2010) (ALJ improperly rejected the opinion of a physician who treated a plaintiff for bipolar disorder and depression on the basis that the physician did not recommend that the plaintiff be hospitalized).

The ALJ's final reason to reject Dr. Gordon's opinion — that Plaintiff's ability to care for her children demonstrates greater stability than Dr. Gordon opined — is not a specific and legitimate reason supported by substantial evidence. Where a plaintiff's "limited activities were consistent with the treating physician's opinion," the ALJ may not reject a treating physician's opinion because of those activities. Esparza, 631 F. App'x at 463. "One does not need to be 'utterly incapacitated' in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001). Dr. Gordon opined that Plaintiff has anxiety and depression, which causes severe limitations in her ability to deal with normal work stress, work with others, and respond appropriately to changes. These limitations are consistent with the anxiety Plaintiff has in carrying out her parenting responsibilities. During an October 2010

visit with Dr. Gordon, Plaintiff "expressed interest in doing family counseling stating that she thinks her children could benefit and that she could also learn to deal w[ith] them and their behaviors." (AR 369). That same month, Plaintiff felt tired because of her responsibilities relating to her children. (AR 373). On June 19, 2013, Plaintiff stated that family members will "from time to time" take care of her small children when "she needs a break." (AR 741). At a January 31, 2013, visit, Plaintiff reported increased anxiety because her son was being bullied at school and "she [wasn't] sure what to say to him or how to handle it." (AR 747). During a July 24, 2015, visit, Plaintiff had increased anxiety because her children were home for the summer and it was hard for Plaintiff to stay calm. (AR 747). Plaintiff's ability to cope with day-to-day parenting issues is therefore consistent with Dr. Gordon's opinion.

Accordingly, the ALJ did not provide specific and legitimate reasons to reject Dr. Gordon's opinion by criticizing Dr. Gordon's use of a checked-box form and making conclusory assertions regarding the Dr. Gordon's clinical findings, the medical evidence, and Plaintiff's daily activities.

## C. **Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175–78 (9th Cir. 2000). Where no useful purpose would be served by remand, or where the

record is fully developed, it is appropriate to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman, 211 F.3d at 1179-81.

Here, because the ALJ failed to follow instructions on remand and failed to properly reject the opinion of Dr. Gordon, remand is appropriate. Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).[4]

\\

\\

---

[4] The Court has not reached any other issue raised by Plaintiff except to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that Plaintiff is in fact disabled." See Garrison, 759 F.3d at 1021. Accordingly, the Court declines to rule on Plaintiff's claim regarding the ALJ's error in not giving specific and legitimate reasons to reject Dr. Abdelmalek's opinion that Plaintiff is severely limited in responding to changes in a routine work setting. (Joint Stip. at 5-6). Because this matter is being remanded for further consideration, this issue should also be considered on remand.

**ORDER**

For the foregoing reasons, the decision of the Administrative Law Judge is VACATED, and the matter is REMANDED, without benefits, for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: June 28, 2017

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE